## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

EDWINNA KOSEA,

     Plaintiff,

v.                                       Civ. No. 20-307 WJ/GBW

KILOLO KIJAKAZI,[1]
*Acting Commissioner of the*
*Social Security Administration*,

     Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before me, pursuant to the Court's Order of Reference (*doc. 6*), on Plaintiff's Motion to Reverse and Remand for a Rehearing (*doc. 21*) the decision of the Social Security Agency ("SSA") to deny her Social Security Disability Insurance benefits ("SSDI"). For the reasons discussed below, I recommend DENYING Plaintiff's Motion, and AFFIRMING the judgment of the SSA.

## I. PROCEDURAL HISTORY

Plaintiff filed an initial application for SSDI on October 24, 2017, alleging disability beginning on July 15, 2012. Administrative Record ("AR") at 227, 259. Her application was denied on initial review on February 13, 2018, and again on reconsideration on May 30, 2018. AR at 116, 126. On January 10, 2019, an initial hearing

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is automatically substituted for Andrew Saul as defendant in this matter.

was held by an Administrative Law Judge ("ALJ"), who reset the case for another hearing to allow Plaintiff to gather additional documentation.  AR at 69–77.  On April 16, 2019, the ALJ held that hearing.  AR at 32–67.  On June 12, 2019, the ALJ issued an unfavorable decision.  AR at 25.  Plaintiff sought review from the Appeals Council, which denied review on February 7, 2020, making the ALJ's denial of SSDI the final decision of the Commissioner.  AR at 1.  On April 6, 2020, Plaintiff filed suit in this Court, seeking review and reversal of the ALJ's decision.  *Doc. 1.*

## II.  STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a court may review a final decision of the Commissioner only to determine whether it (1) is supported by "substantial evidence" and (2) comports with the proper legal standards.  *Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 800–01 (10th Cir. 1991).  "In reviewing the ALJ's decision, we neither reweigh the evidence nor substitute our judgment for that of the agency."  *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks omitted).

Substantial evidence "requires more than a mere scintilla, but less than a preponderance."  *Lax v. Astrue*, 489 F.3d 1080, 1083 (10th Cir. 2007).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Casias*, 933 F.3d at 800 (internal quotation marks and citation omitted).  "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence."  *Clifton v. Chater*, 79 F.3d 1007, 1009–10

(10th Cir. 1996).  "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."  *Id.* at 1010.  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence."  *Lax*, 489 F.3d at 1084.

## III. ALJ EVALUATION

### A.  <u>Legal Standard</u>

For purposes of SSDI, an individual is disabled when he "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  To determine whether a person satisfies these criteria, the SSA has developed a five-step test.  *See* 20 C.F.R. § 404.1520.  If the Commissioner finds an individual disabled at any step, the next step is not taken.  *Id*. § 404.1520(a)(4).

At the first four steps of the analysis, the claimant has the burden to show: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and that either (3) his impairments meet or equal one of the "Listings" of presumptively disabling impairments; or (4) he is unable to

perform his "past relevant work." *Id.* § 404.1520(a)(4)(i)–(iv); *Grogan v. Barnhart*, 399

F.3d 1257, 1261 (10th Cir. 2005).

Step four of this analysis consists of three phases. *Winfrey v. Chater*, 92 F.3d 1017,

1023 (10th Cir. 1996). First, the ALJ determines the claimant's residual functional

capacity ("RFC") in light of "all of the relevant medical and other evidence." 20 C.F.R.

§ 404.1545(a)(3). A claimant's RFC is "the most [he] can still do despite [physical and

mental] limitations." *Id.* § 404.1545(a)(1). Second, the ALJ determines the physical and

mental demands of the claimant's past work. "To make the necessary findings, the ALJ

must obtain adequate 'factual information about those work demands which have a

bearing on the medically established limitations.'" *Winfrey*, 92 F.3d at 1024 (quoting

Social Security Ruling (SSR) 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982)). Third, the ALJ

determines whether, in light of the RFC, the claimant is capable of meeting those

demands. *Id.* at 1023, 1025.

If the ALJ concludes that the claimant cannot engage in past relevant work, he

proceeds to step five of the evaluation process. At step five, the burden of proof shifts

to the Commissioner to show that the claimant is able to perform other work in the

national economy, considering the claimant's RFC, age, education, and work

experience. *Grogan*, 399 F.3d at 1261.

**B.  The ALJ's Decision**

On June 12, 2019, the ALJ issued a decision denying Plaintiff's application for

SSDI benefits.  *See* AR at 15–25.  In denying Plaintiff's application, the ALJ applied the

five-step sequential analysis.  At step one, he found that Plaintiff had "not engage[d] in

substantial gainful activity during the period from her alleged onset date of June 15,

2012[,] through her date last insured of December 31, 2017."  AR at 17.

At step two, he found that Plaintiff had the following severe impairments: (i) spine

disorders; and (ii) obesity.  *Id.*  The ALJ also noted Plaintiff's headaches, depression, and

anxiety but found each of these impairments "non-severe."  AR at 18.

At step three, the ALJ found that neither of Plaintiff's severe impairments—

individually or in combination—"met or medically equaled the severity" of an

impairment in the Listings.  AR at 19.  The ALJ held that Plaintiff's spine disorders did

not satisfy Listing 1.04 (Disorders of the Spine) since diagnostic tests did not show

significant nerve root or spinal cord impingement, physical examinations did not reveal

the requisite motor deficits, and there was no evidence that Plaintiff had received a

prescription for an assistive device.  *Id.*  As for Plaintiff's obesity, the ALJ first noted that

there is no listing for this condition and then found this condition's functional

limitations, alone and in combination with Plaintiff's other impairments, did not satisfy

the requirements of any listing.  *Id.*

At step four, the ALJ determined that Plaintiff did not have the RFC to return to

her past employment as a home attendant and medical assistant, but did have the RFC

to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), subject to several

5

limitations.  AR at 20, 23.  The ALJ found that, with normal breaks, Plaintiff "was limited to occasionally lifting and/or carrying ten pounds, standing and/or walking about two hours in an eight-hour workday, and sitting for about six hours in an eight-hour workday."  AR at 20.  He also limited Plaintiff to balancing, kneeling, and crouching frequently; stooping, crawling, or climbing ramps or stairs occasionally; and never climbing ladders, ropes, or scaffolds.  *Id.*

At step five, the ALJ considered Plaintiff's age, education, work experience, and RFC and determined that jobs that she can work exist in significant numbers in the national economy.  AR at 23–24.  Specifically, the ALJ found that Plaintiff can perform the requirements of three representative, SVP 2 occupations: clerk (Dictionary of Occupational Tables ("DOT") 209.587-010, 8,000 jobs nationally), document preparer (DOT 249.587-018, 40,000 jobs nationally), and touch up screener (DOT 726.684-110, 20,000 jobs nationally).  AR at 24.  Accordingly, the ALJ concluded that Plaintiff was not disabled, as the Social Security Act defines the term, from July 15, 2012, through December 31, 2017.  *Id*.

## IV. PARTIES' POSITIONS

Plaintiff asserts that, at step four, the ALJ erred by not providing adequate explanations for rejecting the medical opinions of Dr. Frances Chavez and Dr. John R. Vigil as unpersuasive.  *See doc. 21* at 15–25; *doc. 25* at 2–9.  With respect to Dr. Chavez, Plaintiff contends that (i) the ALJ's failure to consider parts of the record consistent with

Dr. Chavez's opinions before finding them inconsistent amounts to a legal error, *see doc. 21* at 17; *doc. 25* at 3, 6; (ii) the ALJ's findings that Dr. Chavez's opinions were internally and externally inconsistent are not supported by substantial evidence, *see doc. 21* at 16–20; *doc. 25* at 2–4; and (iii) the ALJ did not provide a sufficient explanation for finding Dr. Chavez's opinions not supportable, *doc. 21* at 18–19; *doc. 25* at 3.[2]  With respect to Dr. Vigil, Plaintiff contends that (i) the ALJ's failure to consider parts of the record consistent with Dr. Vigil's opinions before finding them inconsistent constitutes a legal error, *see doc. 21* at 22; *doc. 25* at 8; (ii) the ALJ's finding that Dr. Vigil's opinions were inconsistent is not supported by substantial evidence, *doc. 21* at 24; (iii) the ALJ did not provide a sufficient explanation for finding Dr. Vigil's opinions not supportable, *doc. 21* at 24; *doc. 25* at 8; and (iv) the ALJ's reliance on the lack of evidentiary support for Dr. Vigil's opinions about Plaintiff's mental limitations is an inappropriate non-sequitur, *doc. 21* at 24.  As none of Plaintiff's arguments are convincing, I conclude that the Court should affirm the ALJ's decision.

## V. ANALYSIS

The ALJ did not err when finding the medical opinions of Dr. Chavez and Dr. Vigil unpersuasive.  Since Plaintiff applied for SSDI benefits after March 27, 2017, the

---

[2] In Plaintiff's motion, she also argued that the ALJ committed legal error by not applying the "treating physician rule" to Dr. Chavez's opinion.  *Doc. 21* at 14–16.  However, as argued by Defendant in response and conceded by Plaintiff in her reply, *see doc. 24* at 10–16, 18–19; *doc. 25* at 2, the treating physician rule does not apply to Plaintiff's case since she applied for SSDI after March 27, 2017, *see* 20 C.F.R. § 404.1520c.

applicable regulation for evaluating theses opinions is 20 C.F.R. § 404.1520c.  *See*

*Xiangyuan Sue Zhu v. Comm'r, SSA,* No. 20-3180, 2021 WL 2794533, at *5 & n.8 (10th Cir.

July 6, 2021) (unpublished).  This regulation eliminates the treating physician rule by

not deferring or giving specific evidentiary weight to any medical opinions.  20 C.F.R. §

404.1520c(a).  It also changes the unit of evaluation from a medical opinion to a medical

source.  *Id.* § 404.1520c(a), (b)(1) (requiring the ALJ to evaluate the medical opinions

from a single source together instead of considering each medical opinion from one

medical source individually).  The persuasiveness of a medical source's opinions

depends on five factors: "supportability, consistency; relationship with the claimant;

specialization; and other factors, such as 'a medical source's familiarity with the other

evidence in a claim.'"  *Zhu,* 2021 WL 2794533, at *5 (quoting, *inter alia,* 20 C.F.R. §

404.1520c(c)).

As the most important of the five factors, *see id.,* supportability and consistency

are the only two that the ALJ must explain when assessing the persuasiveness of a

medical source's opinions, 20 C.F.R. § 404.1520c(b)(2).  The former "examines how

closely connected a medical opinion is to medical evidence and the medical source's

explanations: 'The more relevant the objective medical evidence and supporting

explanations presented by a medical source are to support his or her medical opinion(s),

the more persuasive the medical opinions will be.'"  *Zhu,* 2021 WL 2794533, at *5

(internal brackets and ellipsis omitted) (quoting, *inter alia,* 20 C.F.R. § 404.1520c(c)(1)).

Consistency, by contrast, "compares a medical opinion to the evidence: 'The more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) will be.'" *Id.* (internal ellipsis omitted) (quoting, *inter alia*, 20 C.F.R. § 404.1520c(c)(2)).

When assessing the supportability and consistency of a medical source's opinions, the ALJ cannot "pick and choose among medical reports," using only portions of evidence that are favorable to his position and disregarding those that are not. *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004). This requirement, though, does not mean that the ALJ must discuss every piece of controverted evidence. *See Clifton*, 79 F.3d at 1010. Rather, it merely requires the ALJ to show that he considered evidence unfavorable to his findings before making them. *See id.*

Turning to the ALJ's assessment of Dr. Chavez's and Dr. Vigil's medical opinions, I conclude that the ALJ did not err in assessing their persuasiveness or finding them unpersuasive. He applied the proper legal test for assessing these opinions and did not ignore parts of the record with which they were consistent before finding them inconsistent with it. His findings about these opinions' inconsistencies have substantial evidentiary support and he sufficiently explained his finding about them not being supportable. Finally, the ALJ's consideration of evidence about Plaintiff's mental limitations when assessing Dr. Vigil's opinions was not inappropriate.

A. __The ALJ's Analysis of Dr. Chavez's and Dr. Vigil's Opinions__

Before diving further into the analysis, it is useful to review the ways in which

the RFC found by the ALJ differed from the medical opinions of Dr. Chavez and Dr.

Vigil and why the ALJ discounted these physicians' opinions as unpersuasive.  Dr.

Chavez completed medical assessments about Plaintiff's physical, non-physical, and

mental abilities to do work-related activities on December 21, 2018.  AR at 1018–21.  Her

assessed limitations differed from the RFC.  Physically, she limited Plaintiff to

occasionally balancing, kneeling, crouching, lifting and carrying less than five pounds,

and periodically alternating between sitting and standing to relieve pain or discomfort.

AR at 1020.  Non-physically, she found that Plaintiff had moderate limitations in

performing activities within a schedule and maintaining regular attendance and

punctuality, and a marked limitation in maintaining physical effort for long periods.

AR at 1021.  Mentally, she found moderate and marked limitations in understanding

and memory, sustained concentration and persistence, social interaction, and

adaptation.  AR at 1018–19.

The ALJ found Dr. Chavez's medical opinions unpersuasive for being internally

inconsistent with the record, and not supportable.  AR at 22.  With respect to external

inconsistency, the ALJ found that Dr. Chavez's opinions about Plaintiff's physical

limitations were inconsistent with the record for three reasons: (i) "Despite some

findings of lumbar tenderness, spasms, reduced range of motion, positive straight leg-

raising tests, and antalgic gait, examinations produced normal physical findings"; (ii) "[d]iagnostic tests of the lumbar spine showed only 'mild' findings"; and (iii) "[t]here [was] no evidence in the record to support the inclusion of manipulative limitations." *Id.* As for internal inconsistency, the ALJ found that Dr. Chavez's opinions about Plaintiff's mental limitations were inconsistent with her observing that Plaintiff had good general appearance, appropriate mood and affect, and normal insight and judgment on several occasions. Finally, the ALJ found that Dr. Chavez's opinions were not supportable since she "did not adequately explain her conclusions" or "provide any objective findings to support [them]." *Id.*

Turning to Dr. Vigil's medical opinions, in April 2019, he conducted a consultative examination of Plaintiff after which he completed medical assessments for her physical and non-physical limitations. *See* AR at 1179–90. His assessed limitations differed from those in the RFC. Physically, he found that the combination of Plaintiff's chronic back pain, depression, and anxiety limited her to frequently lifting/carrying less than five founds and sitting for less than four hours in an 8-hour workday and prevented her from ever kneeling, stooping, crouching, or crawling. AR at 1184, 1188. Non-physically, he determined that these physical and psychological impairments markedly limited Plaintiff's ability to maintain attention, concentration, and physical effort for extended periods, complete a normal workday without interruptions from pain or fatigue, and perform at a consistent pace without special supervision or an

unreasonable number and length of rest periods.  AR at 1189.  He also opined that these impairments moderately affected Plaintiff's ability to perform activities within a schedule and maintain regular attendance and punctuality.  *Id.*

The ALJ found the above inconsistent with the record and not supportable.  *Id.* He found Dr. Vigil's opinions about Plaintiff's physical and nonphysical limitations inconsistent with the record for three reasons: (i) "[D]espite some findings of lumbar tenderness, spasms, reduced range of motion, positive straight leg-raising tests, and antalgic gait, examinations produced normal physical findings"; (ii) "[d]iagnostic tests of the lumbar spine showed only 'mild' findings"; and (iii) "[t]he evidence does not show [Plaintiff] to have more than 'mild' mental limitations."  *Id.*  He also found Dr. Vigil's opinions were not supportable since his explanations for his conclusions were inadequate.  *Id.*

## B.  <u>The ALJ Did Not Fail to Consider Aspects of the Record Consistent with Dr. Chavez's and Dr. Vigil's Opinions</u>

Plaintiff argues that ALJ erred by not considering evidence consistent with lumbar pain, tenderness, and reduced range of motion and various diagnoses for Plaintiff's back pain when rejecting Dr. Chavez's and Dr. Vigil's opinions.  *See doc. 21* at 17, 22; *doc. 25* at 3, 5–6, 8.  The first part of this argument is factually incorrect.  The ALJ noted "some findings of lumbar tenderness, spasms, reduced range of motion, positive straight leg-raising tests, and antalgic gait" before rejecting these doctors' opinions as inconsistent with normal physical findings found in examinations.  AR at 22.

12

The second part of this argument is not a legal error.  Failing to discuss the diagnoses for Plaintiff's back pain does not amount to improperly "pick[ing] and choos[ing] among medical reports, using portions of [favorable] evidence . . . while ignoring other evidence."  *Hardman*, 362 F.3d at 681; *cf. id.* (remanding since the ALJ cited one study to support his finding that objective medical tests showed no basis for the claimant's pain allegations but ignored all of the other medical evidence in the record indicating that the claim did suffer from severe lumbar pain).  By recounting evidence supporting a finding of more severe back pain before rejecting Dr. Chavez's and Dr. Vigil's opinions as unpersuasive, the ALJ demonstrated that he considered the parts of the record favorable to these opinions.  It matters not that the ALJ did not expressly discuss each and every diagnosis that doctors provided for that pain.  *See Clifton*, 79 F.3d at 1009–10.

**C.  Substantial Evidence Supports the ALJ Finding Dr. Chavez's and Dr. Vigil's Opinions Inconsistent**

Plaintiff argues that there is not substantial evidence for the ALJ's findings about the inconsistency of Dr. Chavez's and Dr. Vigil's opinions.  First, she claims that the three treatment notes that the ALJ cited for the proposition that examinations produced normal physical findings undermine, rather than support, this proposition.  *Doc. 21* at 16–17; *doc. 25* at 4–5.  Next, she contends that Dr. Chavez's opinions are not internally inconsistent with her observations and statements about Plaintiff's appearance, mood, affect, insight, judgment, and activity restrictions.  *Doc. 21* at 17–18; *doc. 25* at 7.  Each of

these arguments invites the Court to re-weigh evidence and substitute its evaluation of the record for that of the ALJ.  The Court should not do so.

1. *Treatment Notes*

Plaintiff claims that neither Dr. Chavez's nor Dr. Vigil's opinions are inconsistent with the three treatment notes that the ALJ cited in support of his conclusion that examinations of Plaintiff produced normal physical findings since parts of these notes support these doctors' opinions.  *Doc. 21* at 16–17; *doc. 25* at 4–5.  This claim misreads the ALJ's reasoning.  The ALJ did not find that the medical record contains *no* information consistent with Dr. Chavez's and Dr. Vigil's opinions or that *all* examinations produced normal physical findings.  Rather, the ALJ found that the record is mixed about the extent of Plaintiff's back pain and cited to records that exemplified this.  AR at 22 (citing to AR at 430 (stating that, while Plaintiff reported muscle pain in her right lower back and straight leg raises (SLRs) were positive for pain, neither her spinous process nor her costovertebral joints were tender to palpation), AR at 603 (recording that, while Plaintiff's lower back was tender to palpation, bilateral SLRs were negative, and her gait was normal), and AR at 1141 (noting that, while Plaintiff's gait was antalgic on the right, her sciatic notch was tender on the right, and a SLR of one leg was positive, there was no spinous or paraspinous tenderness in her lumbar back and a SLR of the other leg was negative)).  The ALJ then found that the severity of physical limitations assessed by Drs. Chavez and Vigil were inconsistent with this mixed record.

14

AR at 22.

Admittingly, the mixed record could be read to be consistent with Dr. Chavez's and Dr. Vigil's opinions (which Plaintiff invites the Court to do). However, the possibility of reading the record in this manner does not mean that the ALJ's reading to the contrary lacks substantial evidence. *See Lax*, 489 F.3d at 1084. It was not unreasonable for the ALJ to find that Dr. Chavez's and Dr. Vigil's opinions about Plaintiff's physical limitations from 2016 through December 2018 and April 2019 respectively were inconsistent with records from this time that contain mixed information about the severity of her back pain and document several examinations that produced normal physical results.

Plaintiff also disputes the notion that Dr. Chavez's and Dr. Vigil's medical opinions can be inconsistent with treatment notes dated December 13, 2016, since her conditions and limitations may have worsened between that date and the dates of these opinions. *Doc. 21* at 16; *doc. 25* at 4. This argument ignores these opinions' temporal scope. Dr. Vigil opined about Plaintiff's physical and non-physical ability to perform work-related activities from March 1, 2016, until April 8, 2019. AR at 1188–89. Dr. Chavez opined about this ability from May 2016 until December 21, 2018. AR at 1020–21, 1199. Since December 2016 falls within these periods, these opinions can be inconsistent with treatment notes from that date.

2.   *Internal Inconsistency of Dr. Chavez's Opinions*

Similarly, Plaintiff contends that that Dr. Chavez's opinions were not internally

inconsistent with her previous examinations and statements.  *Doc. 21* at 17–19; *doc. 25* at

6–7.  The ALJ provides two examples of internal inconsistencies: (i) examination notes

from January 2019 in which Dr. Chavez observed that Plaintiff had a good general

appearance, normal neck, appropriate mood and affect, normal insight, and normal

judgment, AR at 22 (citing AR at 1089, 1098); and (ii) a medical excuse letter dated

September 6, 2018, that states that Plaintiff "had no activity restriction," AR at 22 (citing

AR at 1130).  Both internal inconsistencies are supported by substantial evidence.

i.   *Inconsistency with Examination Notes from January 2019*

Plaintiff disputes the first inconsistency by citing to evidence in other parts of the

record stating that she was "chronically ill-appearing."  *See doc. 21* at 18 (citing AR at

786, 858, 862, 884, 1161).  In doing so, Plaintiff does not challenge the ALJ's finding that

Dr. Chavez's opinions about Plaintiff's limitations were inconsistent with her

observations about Plaintiff's mood, affect, insight, and judgment.  Like the record

about the extent of Plaintiff's back pain, the record about Dr. Chavez's evaluations of

Plaintiff's appearance and mental acuity is mixed.  *Compare* AR at 786 (noting on

September 20, 2017, that Plaintiff was chronically ill-appearing), *with* AR at 1094, 1098

(noting twice in January 2019 that Plaintiff did not appear unkempt and had

appropriate mood and affect, normal insight, and normal judgment).  As was the case

there, it was reasonable for the ALJ to deem that the moderate and marked non-physical and mental limitations[3] found by Dr. Chavez—including a moderate limitation to adhering to basic standards of neatness and cleanliness, *see* AR at 1019—were internally inconsistent with her earlier observations that, at least on some occasions, Plaintiff had a good appearance, appropriate mood and affect, and normal insight and judgment.[4]

In the alternative, Plaintiff also argues that Dr. Chavez's findings of good general appearance, normal neck, appropriate mood and affect, or normal insight and judgment do not conflict with her opinions as a whole. *See doc. 21* at 18 (citing *Stonestreet v. Saul*, Civ. No. 19-230 KK, 2020 WL 1049349, at *10 (D.N.M. Mar. 4, 2020) (unpublished)). This argument misreads the import of the ALJ's reference to evidence about Plaintiff's appearance, mood, affect, insight, and judgment. Clearly, these conditions do not conflict with—and indeed are of minimal relevance to—Dr. Chavez's opinions about

---

[3] Admittedly, the ALJ does not specify that the opinions of Dr. Chavez that relate to Plaintiff's appearance, mood, affect, insight, and judgment are those about Plaintiff's mental limitations. *See* AR at 22. I infer this from context: At the start of the ALJ's assessment of the persuasiveness of Dr. Chavez's opinions, he noted that she had found Plaintiff to have marked mental limitations, AR at 22, and the opinions about these limitations are the only ones that reasonably relate to Dr. Chavez's observations about Plaintiff's appearance, mood, and mental acuity, *see Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) (requiring the Court to exercise common sense when following the ALJ's reasoning).
[4] In her reply brief, Plaintiff recasts her argument about the existence of evidence consistent with Dr. Chavez's opinions about her non-physical and mental limitations as an argument about the ALJ's failure to demonstrate that she considered this evidence. *Doc. 25* at 7. Since Plaintiff did not make this argument in her motion to remand, *see doc. 21* at 17–18, Defendant has not had an opportunity to respond to it. Therefore, the Court cannot consider it. *See Gutierrez v. Cobos*, 841 F.3d 895, 902 (10th Cir. 2016) ("[A] party waives issues and arguments raised for the first time in a reply brief."); *Green v. New Mexico*, 420 F.3d 1189, 1196 (10th Cir. 2005) (holding that a district court may not rely on legal arguments raised for the first time in a movant's reply unless the nonmoving party has an opportunity respond to them).

Plaintiff's physical limitations.  But they may reasonably be read to clash with Dr. Chavez's opinions about Plaintiff's mental limitations—e.g., a moderate limitation in maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness, and a marked limitation in making simple work-related decisions.  *See* AR at 1018–19.  It matters not that the observed conditions do not conflict with every part of Dr. Chavez's opinions.

As for the citation to *Stonestreet*, not only does that opinion not bind the Court, *see Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011), but the concerns that prompted this Court to find that an ALJ had improperly rejected a medical source's opinions as inconsistent with the record are also not present here.  There, the ALJ, *inter alia*, did not explain how "benign objective findings" about the claimant's mental abilities made by emergency room doctors and an orthopedist while assessing his physical ailments were inconsistent with and undermined all the modified and marked mental limitations that a psychologist had identified for the claimant.  2020 WL 1049349, at *10–11.  Here, by contrast, Dr. Chavez made the objective findings about Plaintiff's appearance, mood, affect, insight, and judgment that the ALJ cites as inconsistent with her opinions, and, on at least one occasion, did so after assessing aspects of Plaintiff's mental health.  *See* AR at 1087, 1089, 1091, 1094, 1098, 1100.

### ii. Inconsistency with Medical Excuse Letter Dated September 6, 2018

Plaintiff disputes the second inconsistency by arguing that the medical excuse

18

letter does not rule out her conditions and limitations worsening between its issuance

on September 6, 2018, and Dr. Chavez's assessments in December 2018, and that the

ALJ read this letter out of context.  *See doc. 21* at 19–20 (citing *Montoya v. Saul*, Civ. 1:18-

cv-00831-LF, 2019 WL 6167951, at *11 (D.N.M. Nov. 20, 2019) (unpublished)); *doc. 25* at

7.  The first point of dispute—like Plaintiff's argument about the inconsistency between

Dr. Chavez's medical opinion and treatment notes dated December 13, 2016—ignores

the temporal scope of Dr. Chavez's opinion.  Dr. Chavez opined about Plaintiff's

limitations from May 2016 until December 21, 2018.  AR at 1020–21, 1199.  September 6,

2018, falls within this period.  Therefore, the inconsistency between Dr. Chavez's

opinions and this letter diminishes their persuasiveness.  *See* 20 C.F.R. § 404.1520c(c)(2).

As for the second point of dispute, not only does *Montoya* not bind the Court, *see*

*Camreta*, 563 U.S. at 709 n.7, but the improper treatment of a medical source's opinion

that concerned this Court there is not present here.  In *Montoya*, this Court found that

the ALJ improperly rejected a treating physician's opinion as inconsistent with his

examination findings by ignoring the bulk of the physician's treatment notes that

documented the claimant's repeated complaints of significant back pain and the

numerous diagnostic and therapeutic interventions ordered by the physician to treat

this pain and relying on language about the examination findings that was repeated

verbatim in most of these notes.  2019 WL 6167951, at *11.

Here, by contrast, the no activity restriction in the medical excuse letter does not

cut against the bulk of Dr. Chavez's physician notes.  While these notes consistently note that Plaintiff suffers from back pain, they contain differing information about its severity and its effect on her mobility during the period of alleged disability and eligibility and do not document interventions other than pain medications and a single physical therapy appointment.  *Compare, e.g.*, AR at 786, 788 (noting on September 20, 2017, that Plaintiff appeared uncomfortable due to pain and an examination showed costovertebral angle tenderness), *with, e.g.*, AR at 940–41 (noting on March 23, 2018, that, while Plaintiff had an antalgic gait on the right and a tender right sciatic notch and a left SLR produced leg pain, she did not have any spinous or paraspinous tenderness, her lumbar motion was pain free, her left sciatic notch was not tender, and a right SLR produced no pain); *see also* AR at 746–50 (documenting Plaintiff's sole physical therapy appointment). Therefore, even if the ALJ took the medical excuse letter out of context (or the letter is a form letter of questionably reliability, *see* AR at 561, 566, 578, 582), there is sufficient evidence in the record to support his finding that the severity of the limitations found by Dr. Chavez is internally inconsistent with her examinations of Plaintiff.  *See, e.g.*, AR at 940–41.

### D. The ALJ Provided a Sufficient Explanation for Finding Dr. Chavez's and Dr. Vigil's Opinions Not Supportable

Plaintiff argues that, since Dr. Chavez and Dr. Vigil provided some explanations for their opinions, the ALJ's assertion that neither physician adequately explained their

opinions is not a sufficient reason to find them not supportable.  *Doc. 21* at 18–19, 24; *doc. 25* at 3, 8.  This argument ignores that medical opinions' supportability depends, in part, on objective medical evidence and reads the ALJ's supportability explanations in a vacuum, divorced from the rest of his analysis of these opinions' persuasiveness.

As noted earlier, supportability assesses "the extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation."  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844, 5,853 (Jan. 18, 2017); *see also* 20 C.F.R. § 404.1520c(c)(1). Under this factor, "the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase." *Miles v. Saul*, No. 20-cv-1456-WJM, 2021 WL 3076846, at *2 (D. Colo. July 21, 2021) (unpublished) (quoting *Vellone ex rel. Vellone v. Saul*, 1:20-cv-00261 (RA) (KHP), 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021) (unpublished)).  This is not a new factor.  It is the same supportability factor that ALJs have long considered under the treating physician rule.  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. at 5,857.  Therefore, caselaw about the supportability of medical opinions under the treating physician rule applies to the supportability of such opinions under 20 C.F.R. § 404.1520c(c)(1).

The ALJ provided a sufficient explanation for finding Dr. Chavez's opinions not supportable.  Not only did he explain that she "did not adequately explain her

conclusions," but he also noted that "she did not provide any objective findings to support [them]."  AR at 20.  This latter notation is supported by substantial evidence. *See* AR at 1020–21 (explaining that Dr. Chavez's assessment of Plaintiff's physical limitations was supported by unspecified observations and her assessment of Plaintiff's non-physical limitations was supported by unspecified observations and records); AR at 1018–19 (not providing any explanation for the basis of Dr. Chavez's assessment of Plaintiff's mental limitations).  Before this explanation, the ALJ noted that the objective medical tests in the record supported only mild limitations.  AR at 20.  The absence of objective medical tests supporting a medical opinion is sufficient reason to find it not supportable.  *See Branum v. Barnhart*, 385 F.3d 1268, 1275–76 (10th Cir. 2004) (holding that, under the treating physician rule, the ALJ properly found a medical source's opinion not supportable where few clinical findings or diagnostic tests supported it); 20 C.F.R. § 404.1520c(c)(1) (conditioning the supportability of a medical source's opinions on relevant objective medical evidence that supports them).

Likewise, the ALJ provided a sufficient explanation for finding Dr. Vigil's opinions not supportable.  After noting that objective medical tests only showed mild limitations, the ALJ explained that Dr. Vigil's opinions were not supportable as the doctor "did not provide an adequate explanation for his conclusions."  AR at 22.  When opining that Plaintiff had severe limitations, Dr. Vigil recounted Plaintiff's medical history, the medical records that he reviewed, and the results of his examinations of her

and then explained that "[m]edical records and [his] evaluation indicate that [Plaintiff] has significant pain with even minimal activity . . . and . . . moderate problems with most aspects of daily living."  AR at 1184; *see also* AR at 1179–84.  He also ticked boxes stating that unspecified observations, records, and objective testing supported his opinions about Plaintiff's moderate and marked physical and non-physical limitations. AR at 1188–89.  He did not, though, reference any specific objective tests that supported his limitations.  *See* 1179–84, 1188–89.  Given that the ALJ prefaced his not supportable finding by noting that objective testing supported only mild limitations, it may be inferred that the ALJ found that Dr. Vigil's explanation of his opinions inadequate, in part, due to the lack of objective testing that supported it.  *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) ("Where [a court] can follow the adjudicator's reasoning in conducting [its] review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal.").  As noted above, a lack of supporting objective testing is a sufficient reason to find a medical source's opinions not supportable.  *See Branum*, 385 F.3d at 1275–76; 20 C.F.R. § 404.1520c(c)(1).

E.  **The ALJ's Reliance on the Lack of Evidentiary Support for Dr. Vigil's Opinions about Plaintiff's Mental Limitations Was Not Improper**

Plaintiff's final argument is that the ALJ's reliance on the lack of evidentiary support for Dr. Vigil's opinions about her mental limitations is an inappropriate non-sequitur.  *See doc. 21* at 24 (citing *Benson v. Saul*, No. 19-0457 SMV, 2020 WL 3448046, at

*5 (D.N.M. June 24, 2020) (unpublished)).  In *Benson*, this Court found that an ALJ improperly rejected a medical source's opinions about how a claimant's impairments affected "non-physical work activities" solely for being inconsistent with the claimant's mental health records.  2020 WL 3448046, at *5.  Since the source considered the claimant's pain, fatigue, and mental health in forming his opinions and the ALJ's reasoning only addressed the latter, this Court held that the reasoning was not sufficiently related to the opinion to constitute a valid reason for rejecting it.

No analogous flaw in reasoning exists here.  The ALJ did not exclusively rely on the lack of evidence for Plaintiff having more than mild mental limitations to reject Dr. Vigil's opinions about her ability to do non-physical work-related activities.  He also relied on evidence in the record that disputed Dr. Vigil's opinions about the intensity, persistence, and limiting effects of Plaintiff's back pain—particularly examinations that produced normal findings and diagnostic tests that that showed only mild findings.  AR at 22.  In doing so, the ALJ's reasoning addressed both the prongs on which Dr. Vigil's opinions about Plaintiff's non-physical limitations stand and therefore is sufficient to reject them.

## VI.   CONCLUSION

For the foregoing reasons, I recommend finding that Plaintiff's Motion to Reverse and Remand for a Rehearing (*doc. 21*) be DENIED, and the Commissioner's decision be AFFIRMED.

_____

GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**